IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JUSTIN SCOTT PRUE, | Case No.: 3:16-CV-01044-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Justin Scott Prue ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). Because the Commissioner's decision is not supported by substantial evidence, her decision should be REVERSED and REMANDED for further proceedings.

///

Page 1 - OPINION AND ORDER

***Procedural Background***

Plaintiff filed his application for DIB on February 20, 2014, alleging disability as of May 30, 2010. (Tr. 169-70.) The Commissioner denied his application initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 114-18, 120-22, 126-27.) An administrative hearing was held on July 2, 2015. (Tr. 40-74.) After the hearing, the ALJ issued an unfavorable decision on October 5, 2015, finding plaintiff not disabled. (Tr. 15-39.) The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final. (Tr. 1-6.)

***Factual Background***

Born on June 18, 1981, plaintiff was 28 years old on the alleged onset date of disability and 34 years old at the time of the hearing. (Tr. 76, 89, 111, 169.) He speaks English, graduated high school, and has U.S. Marine Corps training in combat engineering and recruiting. (Tr. 86, 109, 111, 199.) Plaintiff alleges disability due to failed back syndrome, post traumatic stress disorder ("PTSD"), major depression, and suicidal ideation. (Tr. 198.)

***Standard of Review***

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.[1] First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(C). If the claimant does not have a medically determinable, severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant

---

[1] Effective March 27, 2017, updates were made to the regulations and some sections of the regulations were renumbered. The C.F.R. sections referenced throughout this opinion are the versions of the C.F.R. that were in effect at the time plaintiff requested judicial review.

Page 3 - OPINION AND ORDER

work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## *The ALJ's Findings*

The ALJ performed the sequential analysis. At step one of the five-step process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 30, 2010, the alleged onset date. (Tr. 20.) At step two, the ALJ concluded that plaintiff had the following severe impairments: degenerative disc disease, obesity, failed back syndrome, anxiety, depression, and PTSD. (Tr. 20-21.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 21-22.)

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff has the RFC to

> perform modified sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift/carry 10 pounds occasionally and less than 10 pounds frequently. He can sit for 6 of 8 hours and stand/walk for 2 of 8 hours. He can push/pull as much as he could lift and carry. The claimant can never climb ladders or scaffolds. He can no more than occasionally crouch, crawl, balance, stoop, kneel and climb ramps and stairs. He is further limited to simple, routine and repetitive tasks and simple work related decision [sic]. He can no more than occasionally interact with the public and with coworkers.

(Tr. 23-32.)

At step four, the ALJ found that plaintiff had no past relevant work. (Tr. 32.) At step five, the ALJ concluded that plaintiff could "perform the requirements of representative occupations such

Page 4 - OPINION AND ORDER

as" electronics jobs, semi-conductor jobs, and circuit board jobs. (Tr. 33-34.) The ALJ therefore concluded plaintiff was not disabled. (Tr. 34.)

## *Discussion*

Plaintiff argues that the ALJ erred by: (1) improperly disregarding the Veteran Administration's (VA) decision that plaintiff was unemployable; (2) improperly rejecting the medical opinion of Dr. Steven Mandelblatt; (3) improperly rejecting the medical opinion of LCSW Ms. Martha O'Neal; (4) failing to provide a clear and convincing reason to reject his subjective symptom testimony; and (5) assigning an RFC assessment to plaintiff that was not supported by substantial evidence.

I. <u>VA Disability Rating</u>

Plaintiff argues the ALJ failed to provide a persuasive, specific and valid reason for discrediting the VA disability rating decision that he was unemployable. (Pl.'s Opening Br. 4-5, Pl.'s Reply Br. 1-3.)

An ALJ must ordinarily give great weight to a Veterans Administration determination of disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "While a VA disability decision does not necessarily compel the SSA to reach an identical result, the ALJ must consider the VA's findings in reaching his decision because of the similarities between the VA disability program and the Social Security disability program." *Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012) (internal quotes omitted). However, because the VA and SSA criteria for determining disability are not identical, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record. *Id.*

Here, the ALJ considered the VA's March 6, 2013 letter, noting that plaintiff was given an

80% rating of service connected disability but was paid at the 100% rate because he was deemed "unemployable." (Tr. 31.) The ALJ also noted that plaintiff "appears to have a 70% rating for PTSD and a 40% rating for ankylosis spondylitis." (Tr. 31.) The ALJ gave "substantial weight to the conclusions of the Department of Veteran Affairs," noting that plaintiff's "overall disability rating of 80%" was "not inconsistent" with his assessment of plaintiff's limitations or RFC, and that the VA letter's limitations "do not result in a finding the claimant is totally unable to work." (Tr. 31.)

Plaintiff argues that the ALJ erred when evaluating the VA disability rating because he did not weigh the VA's finding that plaintiff was "unemployable," specifically that the ALJ failed to provide a persuasive, specific, and valid reason for assigning less weight to this part of the VA's disability rating. (Pl.'s Opening Br. 5, Pl.'s Reply Br. 1.) This court agrees. Under 38 C.F.R. § 4.16(a), a total disability rating is assigned by the VA when a person, "in the judgment of the rating agency, [is] unable to secure or follow a substantially gainful occupation as a result of a service-connected disabilities." Here, although the ALJ noted both the 80% service connected disability rating and that plaintiff was paid at the 100% rate because he was "deemed unemployable," the ALJ failed to explain why he discredited the VA's finding of plaintiff's unemployability, how the VA's 100% unemployability rating was consistent with his finding that plaintiff could work, and why the RFC was consistent with the disability rating. Therefore, the ALJ erred in evaluating the VA disability rating.

## II. Medical Opinion of Treating Physician, Dr. Steven Mandelblatt

Next, plaintiff argues the ALJ erred by failing to provide a specific and legitimate reason for rejecting Dr. Steven Mandelblatt's medical opinion from February 2015. (Pl.'s Opening Br. 5-9, Pl.'s Reply Br. 3-6.)

An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Dr. Mandelblatt treated plaintiff for a number of years and issued medical opinions in 2011, 2012, and 2015. (Tr. 1027, 1125, 2165.) The medical opinion at issue is the Medical Source Statement he completed on February 27, 2015, where he diagnosed plaintiff with failed back surgery, chronic lower back pain, and depression. (Tr. 2165-68.) Dr. Mandelblatt opined that plaintiff was unable to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms" and was unable to "[p]erform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 2166.) He wrote that plaintiff was seriously limited in getting along with peers, responding to changes in a routine, dealing with normal work stress, interacting appropriately with the general public and maintaining socially appropriate behavior. (*Id.*)

With respect to plaintiff's physical limitations, Dr. Mandelblatt wrote that plaintiff's impairments prevented him from lifting or carrying any amount of weight, that plaintiff can sit for less than two hours, can stand/walk for less than two hours, and that plaintiff's impairments posed both postural and manipulative limitations that prevent him from climbing (ramps, stairs, ladders, ropes, scaffolds), balancing, kneeling, crouching, crawling, stooping, reaching, handling, fingering, and feeling. (Tr. 2167.) Dr. Mandelblatt indicated it was his medical opinion that plaintiff would be "off-task" 25% or more on a typical workday, and would have more than four absences a month from work. (Tr. 2168.) His overall prognosis was "fair for continued stability short term, poor to

nonexistent for recovery" noting that plaintiff's "chronic failed back pain, PTSD/depression is unfortunately, given the amount of Therapy/Medication/Evaluations he has had, not likely to improve significantly." (Tr. 2165, 2168.)

Here, the ALJ gave "little weight" to Dr. Mandelblatt's 2015 opinion. (Tr. 30-31.) As an initial matter, Dr. Mandelblatt's opinion that plaintiff had such significant limitations were contradicted by the opinions of state agency medical consultants Dr. Linda Jensen and Dr. Sharon Eder, who reviewed the medical evidence and concluded that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and had only occasional postural limitations. (Tr. 82-83, 103-04.) The ALJ was therefore required to provide a specific and legitimate reason for discrediting Dr. Mandelblatt's controverted opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ gave three reasons for discrediting Dr. Mandelblatt's 2015 medical opinion. (Tr. 30-31.) First, the ALJ noted imaging results of plaintiff's spine showed his fusion hardware was intact, and no additional surgery was recommended. (Tr. 31.) "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012)). However, "[o]bservations [of improvement] must be 'read in context of the overall diagnostic picture' the provider draws." *Ghanim*, 763 F.3d at 1162 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205(9th Cir. 2001)).

Here, substantial evidence does not support the ALJ's conclusion that Dr. Mandelblatt's medical opinion was inconsistent with his treatment notes. Although treatment notes show plaintiff's fusion hardware was intact, when read in their entirety the treatment notes do not support Dr. Mandelblatt's overall findings regarding plaintiff's limitations. On February 19, 2012, Dr.

Mandelblatt wrote that plaintiff's hardware was intact finding there was "NO evidence of hardware failure or latent infection or any other problem that would explain your [ongoing] pain in a different manner," but did note that the "markers of inflammation . . . are slightly high for unknown reasons." (Tr. 2237.) Dr. Mandelblatt determined plaintiff's hardware was not causing plaintiff's inflammation, but recognized that plaintiff's pain still remained, which is consistent with the limitations he noted in his Medical Source Statement written on February 27, 2015. Therefore, Dr. Mandelblatt's statements concerning plaintiff's physical limitations are not inconsistent with fact that plaintiff's hardware was intact.

Additionally, the fact that no additional surgery was recommended is not a specific and legitimate reason for discrediting Dr. Mandelblatt's 2015 medical opinion. Review of the record shows the decision to not pursue additional surgery was made after medical providers determined that it was "unlikely that further stabilization is likely to be beneficial," and recommended injections to help alleviate plaintiff's pain instead. (Tr. 2220.) Therefore, the medical decision to no longer suggest additional surgery was not based on plaintiff's pain being controlled, but because other methods were deemed more beneficial. Therefore, this was a not specific and legitimate reason for discrediting Dr. Mandelblatt's medical opinion.

Next, the ALJ found that plaintiff's pain symptoms "were at least somewhat controlled by medication." (Tr. 31.) Again, when reviewing the medical record in its entirety, this reason was not supported by substantial evidence, and therefore not a specific and legitimate reason for discrediting Dr. Mandelblatt's 2015 medical opinion. "That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace." *Holohan*, 246 F.3d at 1205. Here, plaintiff had improvement in controlling his back

Page 9 - OPINION AND ORDER

pain when he began using medication, eventually being able to participate in activities of daily living like cycling and traveling with family, but by 2015 plaintiff found medication was no longer effective; he experienced debilitating pain and was able to function only minimally. (Tr. 1099, 2108, 2130, 2194, 2205, 2258.) Here, the fact that plaintiff's pain was "somewhat controlled" did not contradict the fact that Dr. Mandelblatt overall determined plaintiff would suffer from physical limitations that would affect his ability to work.

Finally, the ALJ noted plaintiff's activity levels, which included biking, traveling, and socializing, which the ALJ found suggested that plaintiff's "physical and psychological symptoms may not be as debilitating as alleged." (Tr. 31.) Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim*, 763 F.3d at 1162 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999)). Here, although plaintiff's activity levels increased during 2013, including biking for long distances and traveling, these activities significantly decreased in 2015, when he returned with multiple complaints of debilitating back pain. (*See* Tr. 1058, 1079, 2030, 2055, 2197, 2205, 2233.) As Dr. Mandelblatt's medical opinion was issued in February 2015, his findings are supported by the record.

When reviewed as a whole, on this record, the ALJ's reasons for discrediting Dr. Mandelblatt's 2015 opinion are not supported by substantial evidence.

III.  Medical Opinion of Other Source, LCSW Ms. Martha O'Neal

Next, plaintiff argues that the ALJ erred by assigning little weight to the medical opinion of LCSW, Martha K. O'Neal, an "other source." (Pl.'s Opening Br. 9-11, Pl.'s Reply Br. 6-7.)

Evidence from an acceptable medical source is used to establish whether a claimant has a

medically determinable impairment. 20 C.F.R. § 404.1508. Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, nad qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). Evidence from "other sources," including, but not limited to, "nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, therapists," may also be used to show the severity of a claimant's impairments and how they affect his ability to work. 20 C.F.R. § 404.1513(d). In order to reject evidence from "other sources," the ALJ must give germane reasons for doing so. *Molina*, 674 F.3d at 1111 (9th Cir. 2012).

On February 2, 2009, Ms. O'Neal wrote a letter noting she treated plaintiff for "his adjustment to disability and chronic pain, and depression." (Tr. 362.) Ms. O'Neal wrote that plaintiff's Burns Depression Checklist suggested severe depression, that she assessed suicidality, and that plaintiff fits the PTSD criteria. (*Id.*) Ms. O'Neal additionally noted that the functional impact of plaintiff's back pain was minimized on evaluation based on "his stoicism with doctors." (*Id.*)

The ALJ gave Ms. O'Neal's opinion "little weight," finding that she was not an acceptable medical source. (Tr. 30.) Although Ms. O'Neal is not an "acceptable medical source," this is not a germane reason for rejecting her medical opinion. *See* SSR 06-03p (When making a determination or decision of disability all available evidence in the record will be considered, including "objective medical evidence; other evidence from medical sources, including their opinions; statements by the individual and others about the impairment(s) and how it affects the individual's functioning; information from other "non-medical sources" and decisions by other governmental and nongovernmental agencies about whether an individual is disabled or blind").

Next, the ALJ gave little weight to Ms. O'Neal's opinion because it was "rendered prior to

Page 11 - OPINION AND ORDER

the claimant's alleged onset date" and therefore, "does not reflect his functioning during the relevant period." Medical opinions that predate the alleged onset of disability are of limited relevance. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008). As Ms. O'Neal's medical opinion was rendered in February 2009, over a year prior to plaintiff's alleged onset date of May 30, 2010, the ALJ reasonably gave it little weight reasonably finding her opinion would not accurately reflect work-related limitations present in 2010. Similarly, the ALJ gave "little weight" to Ms. O'Neal's medical opinion because it was not consistent with plaintiff's activity levels during the relevant period, noting plaintiff's ability to travel, bike ride, swim, play darts, shoot guns and bows, visit his grandparents and complete college coursework. (Tr. 30.) Indeed, Ms. O'Neal's medical opinion was issued in February 2009, during a time when plaintiff's daily activities were different from the activities he participated in after his alleged onset date of May 30, 2010. The ALJ provided germane reasons for discrediting Ms. O'Neal's opinion and there is no error.

## IV. Plaintiff's Subjective Symptom Testimony

Plaintiff also argues the ALJ erred by failing to provide a clear and convincing reason for rejecting his subjective symptom testimony. (Pl.'s Opening Br. 14-18, Pl.'s Reply Br. 8-10.)

If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the

ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between his testimony and his conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of. *Tommasetti*, 533 F.3d at 1040; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

At the hearing, plaintiff testified that he is unable to work due to constant lower back pain and severe depression. (Tr. 43.) He reported having some pain relief from medication, but no treatments have completely eliminated the pain. (*Id.*) Plaintiff testified that his pain always remains at "7 out of 10" and worsens with more activity. (Tr. 44-45.) The ALJ rejected plaintiff's testimony regarding his symptoms and limitations, overall finding that the medical evidence record suggests that plaintiff's physical and mental symptoms are not as compromised as plaintiff suggests. (Tr. 24.) The ALJ provided a clear and convincing reason for rejecting plaintiff's subjective symptom testimony.

First, the ALJ noted that although plaintiff was diagnosed with degenerative disc disease, failed back syndrome, and obesity, medical imaging showed plaintiff had intact hardware with no complications and had no additional surgery recommended. As discussed above with respect to Dr. Mandelblatt's medical opinion, the court similarly finds this is not a clear and convincing reason for discrediting plaintiff's subjective symptom testimony. When read in context, these facts do not

Page 13 - OPINION AND ORDER

contradict plaintiff's subjective symptom testimony and the medical opinion evidence that his pain remained despite medical evidence showing no complications with his spinal hardware. This is not a clear and convincing reason for discrediting plaintiff's subjective symptom testimony.

Next, the ALJ found plaintiff had some relief with medication and other treatment. (Tr. 24.) Again, as discussed above, although plaintiff had initial improvement with medication and treatment, an independent review of the record shows plaintiff's improvement was not long-term and he was experiencing debilitating back pain through 2015. (*See* Tr. 1058, 1079, 2030, 2055, 2197, 2205, 2233.) Therefore, although plaintiff experienced "some relief" from his pain, it does not contradict his testimony that he was unable to work because of his impairments.

Third, the ALJ noted plaintiff's high activity levels were "inconsistent with the claimant's allegedly debilitating symptoms." (Tr. 24.) The ability to spend "a substantial part of [one's] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" is a clear and convincing reason to reject a plaintiff's symptom testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d at 603). Indeed, although plaintiff reported spending time walking, cycling, and traveling with family, the record reflects that he had to stop many of these activities after pain symptoms returned and prevented him from participating in them. (*See* Tr. 1797, 2029-30, 2036, 2066, 2108, 2122, 2194.) Therefore, this was not a clear and convincing reason to discredit plaintiff's subjective symptom testimony.

Finally, the ALJ discredited plaintiff's subjective symptom testimony with respect to his mental health symptoms because he was never psychiatrically hospitalized, never placed in an inpatient program, and had mental status exams within normal limits. (Tr. 27.) Inconsistency between plaintiff's testimony and the medical record is a clear and convincing reason to discredit

Page 14 - OPINION AND ORDER

a claimant's testimony. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Indeed, an independent review of the record showed plaintiff suffered from depression and PTSD, but over the course of treatment he was able to become comfortable driving without PTSD symptoms, interacted appropriately with family and friends, and his affect and mood began to improve. (*See* Tr. 807, 853, 1113, 1124, 1131, 1138, 1140.) This was a clear and convincing reason to discredit plaintiff's subjective symptom testimony.

In sum, the ALJ provided at least one clear and convincing reason for discrediting plaintiff's subjective symptom testimony. There is no error.

V. <u>RFC Not Supported by Substantial Evidence</u>

Finally, plaintiff argues the ALJ erred when assessing his RFC, by "fail[ing] to include all limitations that were supported by the record." (Pl.'s Opening Br. 11, Pl.'s Reply Br. 7-8.) Specifically, plaintiff argues the ALJ "should have included more restrictive limitations in regards to plaintiff's ability to maintain adequate pace, persist and sustain workplace activity, as a result of his severe impairments." (Pl.'s Opening Br. 11.)

The RFC is the maximum a claimant can do despite his limitations. *See* 20 C.F.R. §§404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d

Page 15 - OPINION AND ORDER

1157, 1163-65 (9th Cir. 2001).

Because the ALJ erred in evaluating the VA disability rating and Dr. Mandelblatt's medical opinion, the court finds the ALJ erred in assessing plaintiff's RFC.

## *Remand*

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harmen v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F.3d at 876 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir.

2010).

Here, the ALJ failed to credit the VA determination that plaintiff was "unemployable" and the February 2015 medical opinion of Dr. Mandelblatt who opined that plaintiff had significant physical and mental limitations that would prevent him from working. (Tr. 167-68, 2166.) Given the improvement of plaintiff's mental limitations, Dr. Mandelblatt's findings that plaintiff could perform some physical activities, and the VA disability rating that plaintiff is unemployable, this court finds issues still remain such that the case should be remanded for further proceedings.

## *Conclusion*

Based on the foregoing discussion, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 14th day of August 2017.

JOHN V. ACOSTA
United States Magistrate Judge